IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| **TRINITY LIFE INSURANCE COMPANY** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 3:15-cv-5042 |
| | ) | |
| **MICHAEL TEEL,** | ) | |
| Serve: 4709 Paris Road | ) | |
|     Columbia, MO 65202 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DOYLE NIMMO,** | ) | |
| Serve: 231 State Highway 32 | ) | |
|     Buffalo, MO 65622 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Trinity Life Insurance Company, by and through it attorneys of record, for its Complaint against Defendants Michael Teel and Doyle Nimmo, states, alleges, and avers as follows:

### Parties and Jurisdiction

1. Plaintiff Trinity Life Insurance Company ("Trinity Life") is an Oklahoma corporation with its headquarters in Tulsa, Oklahoma.

2. Defendant Michael Teel ("Teel") is a resident of Boone County, Missouri. He can be served at 16255 North Route V, Sturgeon, MO or at Mid-City Lumber, 4709 Paris Road, Columbia, MO 65202.

3. Defendant Doyle Nimmo ("Nimmo") is a resident of Dallas County, Missouri. He can be served at 231 State Highway 32, Buffalo, MO 65622.

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and venue is proper pursuant to 28 U.S.C. § 1391.

**General Allegations**

5. Family Benefit Life Insurance Company ("Family Benefit") is a Missouri corporation. Family Benefit was formed in 1964 by Wayne Walquist and Carson Teel. Between 1964 and present, Family Benefit has offered and sold insurance products.

6. Defendant Nimmo was a director on the Board of Directors of Family Benefit between 1987 and 2011.

7. Between 1987 and 2011, Defendant Nimmo regularly attended the meetings of the Board of Directors of Family Benefit.

8. Defendant Nimmo was an insurance agent for Family Benefit between 1987 and 2011.

9. Defendant Teel's father, Carson Teel, was an insurance agent for Family Benefit. In addition, Carson Teel also served for a period of time as both president and vice-president of Family Benefit and was on the Board of Directors of Family Benefit for a period of time.

10. In 2011, Defendant Nimmo and his wife, Carol Nimmo, jointly owned 5,727 shares of the common stock of Family Benefit.

11. In 2011, Defendant Teel's mother, Ruby Teel, owned 84,161 shares of the common stock of Family Benefit.

(i) Decreasing Term to 95 Policy

12. In 1992, Family Benefit developed a life insurance policy known as the Decreasing Term to 95 policy (a/k/a the Executive Live policy) (hereinafter referred to as the

"Decreasing Term Policy"). A specimen copy of the Decreasing Term Policy is attached hereto as **Exhibit A** and is incorporated herein.

13. In June 1998, Defendant Teel applied for and purchased a $1,500,000 Decreasing Term Policy.

14. In March 1999, Defendant Teel applied for and purchased a $100,000 Decreasing Term Policy.

15. According to Defendant Teel, Carson Teel informed him that the premiums would continue until age 95 at the same dollar amount and the coverage would stay the same until Defendant Teel was 95 years old.

16. Carson Teel's alleged statement to Defendant Teel that the coverage amount under Defendant Teel's Decreasing Term Policies would stay the same until Defendant Teel was 95 years old, if made, is contrary to the express terms of the Decreasing Term Policy, which plainly discloses that the dividends used to keep the coverage and premium steady were not guaranteed, and that, if the dividends were not enough to do so in any given year, a policyholder had the option of purchasing a term rider that would make up for any difference.

17. In June 1997, Defendant Nimmo applied for and purchased a $250,000 Decreasing Term Policy and a $100,000 Decreasing Term Policy. Nimmo, by and through the Nimmo Insurance Agency, also sold nine Decreasing Term Policies.

(ii) Defendant Teel's Sale of Family Benefit Stock

18. In early 2011, Defendant Teel began acting as an agent for his mother, Ruby Teel, for the sale of Ruby Teel's 84,161 shares of Family Benefit stock.

19. Defendant Teel began actively seeking a purchaser for Ruby Teel's stock in Family Benefit.

3

50085022.2
Case 3:15-cv-05042-MDH   Document 1   Filed 04/29/15   Page 3 of 16

20. As agent for Ruby Teel, in early 2011, Defendant Teel contacted Ross Walquist, the president of Family Benefit, to determine if Family Benefit was interested in purchasing Ruby Teel's stock.

21. Walquist informed Defendant Teel that the company would repurchase Ruby Teel's stock at a price of $6.00 per share. Teel rejected that offer.

22. After rejecting Family Benefit's offer, Defendant Teel called Gregg Zahn, the president of Trinity Life. Defendant Teel informed Mr. Zahn that his family owned stock in Family Benefit and offered to sell it to Trinity Life.

23. Defendant Teel and Trinity Life began negotiations for the sale of Ruby Teel's stock to Trinity Life. These negotiations included numerous phone calls and a meeting in St. Louis. During the meeting in St. Louis, Missouri and the phone calls, Defendant Teel provided information about Family Benefit to Trinity Life. An agreement was reached for the sale of Ruby Teel's 84,161 shares of Family Benefit stock to Trinity Life for $800,000.00, or $9.51 per share.

24. At no time did Defendant Teel disclose to Trinity Life that Family Benefit had sold the Decreasing Term Policies with a promise or agreement that the policies' death benefits and premiums would always stay the same, and/or that Family Benefit would always pay a dividend on such policies sufficient to keep the death benefits and premiums the same.

(iii) Trinity Life's Purchase of Remainder of the Family Benefit Stock

25. After buying Ruby Teel's shares of Family Benefit stock, Trinity Life began contacting other Family Benefit shareholders. It received a list of such shareholders from Defendant Teel.

26. Between July 1, 2011 and October 28, 2011, including its purchase of the Family Benefit shares held by Ruby Teel, Trinity Life purchased 31.17% of the outstanding shares of Family Benefit.

27. On September 2, 2011, a meeting of the Board of Directors of Family Benefit was held. Defendant Nimmo was present at this meeting. The Board of Directors of Family Benefit was informed that Trinity Life had purchased Ruby Teel's shares of Family Benefit stock, and that Trinity Life was interested in buying the rest of the stock.

28. On November 10, 2011, Trinity Life made a tender offer to Family Benefit in which it offered to purchase all of the outstanding common stock of Family Benefit at a price of $11.05 per share. The Board of Directors of Family Benefit formed a committee to review Trinity Life's proposed tender offer. All members of Family Benefit's Board of Directors ultimately endorsed the tender offer and recommended that Family Benefit's shareholders sell their stock to Trinity Life at the $11.05 per share tender offer.

29. Ultimately, and a deal was ultimately reached to sell Family Benefit to Trinity Life for $11.05 per share, or about $14,109,082 in total.

30. Before closing on the purchase, Trinity Life conducted due diligence into the books, records, policy forms and financials of Family Benefit. Nothing was found that disclosed to Trinity Life that Family Benefit had sold the Decreasing Term Policies with a promise or agreement that the policies' death benefits and premiums would always stay the same, and/or that Family Benefit would always pay a dividend on such policies sufficient to keep the death benefits and premiums the same.

31. Nimmo, who was a director of Family Benefit, did not tell, reveal or disclose to Trinity Life that the Decreasing Term Policies had been sold with such a promise or agreement,

or that Family Benefit had an enforceable agreement or obligation to guarantee that the dividends on the Decreasing Terms Policies would always be paid, that they would always be paid in an amount to keep the death benefits and premiums on such policies the same, or that there was a promise or agreement to keep the death benefits and premiums the same.

(iv) Lawsuit by Teel and Nimmo

32. On January 17, 2013, the Board of Directors of Family Benefit unanimously voted to not pay a dividend on the Decreasing Term Policy effective March 1, 2013. On January 29, 2013, Family Benefit informed all insureds who held a Decreasing Term Policy of the decision to not pay a dividend on the Decreasing Term Policy.

33. On November 22, 2013, Defendant Nimmo, Defendant Teel, and Rick Messerli filed a lawsuit in the Circuit Court of Greene County, Missouri against Family Benefit captioned *Rick Messerli et al. v. Family Benefit Life Insurance Company*, Case No. 1331-CC01550 (hereinafter "the Lawsuit"). A true and accurate copy of the Petition filed in the Lawsuit is attached hereto as **Exhibit B**.

34. The Lawsuit, in pertinent part, alleged

   a. That Family Benefit "instructed all sellers and agents to represent to potential purchasers that the dividend [on the Decreasing Term Policy] would always be paid and thus the policy in question would result in a level death benefit without an increase in the annual premium." (Ex. B, ¶ 15).

   b. That the "marketing and sale of [the Decreasing Term Policy] was directed by [Family Benefit] with uniform instructions to sellers and agents and uniform sales and promotional material, all designed to indicate that the insurance policy would

provide a consistent total death benefit in the amount of the original death benefit without an increase in the annual premium." (Ex. B, ¶ 19).

   c. That Family Benefit "directed all agents and potential sellers of the insurance policy to market, represent and sell to consumers that the [Decreasing Term Policy] concerned herein was: …(b) dividends committed to purchase [one] year term insurance would make up for any decrease in coverage resulting in a level death benefit; (c) the death benefit was guaranteed; (d) the premium to age 95 was guaranteed …" (Ex. B, ¶ 20).

35. The Lawsuit alleges that Family Benefit is liable to Defendant Teel, Defendant Nimmo and Rick Messerli for breach of contract (Count I), anticipatory breach of contract (Count II), negligent misrepresentation (Count III), fraud (Count IV), and violations of the Missouri Merchandising Practices Act (Count V). Additionally, the Lawsuit seeks to certify two separate classes of Missouri residents. The first class sought would consist of Missouri residents who own a Decreasing Term Policy and the second class sought would consist of Missouri residents who owned a Decreasing Term Policy on January 17, 2013.

36. The allegations in the Lawsuit brought by Defendant Teel, Defendant Nimmo, and Rick Messerli claim that the Decreasing Term Policy was sold by Family Benefit in a manner which was inconsistent with and contrary to the express terms of the Decreasing Term Policy.

37. The Lawsuit was the first time Trinity Life learned that policyholders, including Defendant Nimmo and Defendant Teel, were alleging that the Decreasing Term Policy was sold in a manner which was inconsistent with and contrary to the express terms of the Decreasing Term Policy.

38. At no time during its due diligence did Trinity Life discovery any information indicating that the Decreasing Term Policy was sold in a manner which was inconsistent with the express terms of the Decreasing Term Policy, and at no time did Nimmo or Teel disclose this to Trinity Life.

39. If the allegations in the Lawsuit are true, a fact which was hidden from Trinity Life during its due diligence, Family Benefit would be exposed to a massive potential liability which was not properly accounted for within the company and which substantially decreases the value of Family Benefit. Had Trinity Life been told that the Decreasing Term Policies carried with them an obligation to pay dividends sufficient to maintain the death benefits at their original level without any increase in premiums, notwithstanding the terms of the policies, Trinity Life would either not have purchased Family Benefit or would have paid substantially less for the shares.

## COUNT I

**Violation of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] Against Defendant Teel**

40. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 39 as though set forth herein.

41. During Defendant Teel's negotiation for the sale of Ruby Teel's stock in Family Benefit, Defendant Teel omitted to inform Trinity Life that Family Benefit allegedly made promises and representations during the sale of the Decreasing Term Policies, set forth above, which were contrary to the plain and unambiguous terms of the Decreasing Term Policy.

42. As alleged in the Petition filed in the Lawsuit, Defendant Teel, as a purchaser of two Decreasing Term Policies, allegedly knew of such promises and representations made by Family Benefit but failed to inform Trinity Life of this fact.

8

43. Trinity Life relied on Defendant Teel's representations concerning Family Benefit and he did not disclose what he now alleges to be the true facts about the Decreasing Term policies.

44. If the allegations in the Lawsuit are found to be true as alleged by Defendant Teel, Defendant Teel's statements concerning Ruby Teel's stock in Family Benefit was untrue.

45. If the allegations contained in the Lawsuit are found to be true, Defendant Teel's omissions and untrue statements were material and materially affected the value of the stock of Family Benefit from that represented by Defendant Teel.

46. If the allegations in the Lawsuit are found to be true, Defendant Teel benefited from his omissions and misstatements because the sale price for Ruby Teel's stock was inflated.

47. If the allegations in the Lawsuit are found to be true, upon information and belief, Defendant Teel knew and understood that Family Benefit was having financial difficulties and was a troubled insurance company. This belief is formed upon the following facts:

   a. Defendant Teel's father, Carson Teel, served as a Vice President of Family Benefit for a period of time and was a member of the Board of Directors of Family Benefit for a period of time;

   b. Defendant Teel's nephew, Clayton Jones, was a member of the Board of Directors of Family Benefit for a period of time;

   c. Defendant Teel was actively seeking to sell his mother's stock in Family Benefit; and

   d. Defendant Teel's uncle, Kenny Jones, was also a shareholder in Family Benefit and sold his stock to Trinity Life within two weeks of Trinity Life purchasing Ruby Teel's stock.

48. Defendant Teel had a duty to disclose information to Trinity Life which affected the value of Ruby Teel's stock, including his belief that Family Benefit made representations and promises which were contrary and in conflict with the express terms of the Decreasing Term Policies. This duty arises because:

   a. Defendant Teel, according to the Complaint he filed, knew of the alleged oral promises and misrepresentations made during the sale of the Decreasing Term Policies and Trinity Life did not know this information and could not reasonably have located information concerning alleged oral promises and misrepresentations;

   b. Defendant Teel knew and understood that Trinity Life was relying on his representation of the book value of Ruby Teel's stock in Family Benefit; and

   c. Defendant Teel initiated the sale of the Ruby Teel's stock in Family Benefit to Trinity Life.

49. Defendant Teel, in connection with the sale of Ruby Teel's stock in Family Benefit to Trinity Life, by the use and the means and instrumentalities of interstate commerce or of the mails, directly or indirectly, (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon Trinity Life in violation of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. §240.10b-5].

50. If the allegations contained in the Lawsuit filed by Defendant Teel are found to be true, Trinity Life suffered damages as a result of Defendant Teel's violations of Section 10(b) of

the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. §240.10b-5].

WHEREFORE on Count I of its Complaint, Plaintiff Trinity Life Insurance Company, asks that the Court enter judgment in its favor and against Defendant Michael Teel finding that Defendant Michael Teel violated Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. §240.10b-5], awarding Plaintiff Trinity Life Insurance Company damages in an amount that is fair and reasonable, awarding Plaintiff Trinity Life Insurance Company its attorneys' fees incurred in this action, and for such other and further relief as the Court deems just and proper.

## COUNT II

### Violation of Section 409.5-509 RSMo. Against Defendant Teel

51. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 50 as though set forth herein.

52. Defendant Teel, in connection with the sale of Ruby Teel's stock in Family Benefit to Trinity Life, made untrue statements of a material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstance under which he made them, not misleading.

53. Such actions by Defendant Teel violated Section 409.5-509 RSMo.

54. If the allegations contained in the Lawsuit filed by Defendant Teel are found to be true, Trinity Life suffered damages as a result of Defendant Teel's violations of Section 409.5-509 RSMO.

WHEREFORE on Count II of its Complaint, Plaintiff Trinity Life Insurance Company, asks that the Court enter judgment in its favor and against Defendant Michael Teel finding that Defendant Michael Teel violated Section 409.5-509 RSMo., awarding Plaintiff Trinity Life

11
50085022.2
Case 3:15-cv-05042-MDH   Document 1   Filed 04/29/15   Page 11 of 16

Insurance Company damages in an amount that is fair and reasonable, awarding Plaintiff Trinity Life Insurance Company its attorneys' fees incurred in this action, and for such other and further relief as the Court deems just and proper.

## COUNT III

### Violation of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] Against Defendant Nimmo

55. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 54 as though set forth herein.

56. During Family Benefit's negotiation and communication with Trinity Life concerning Trinity Life's tender offer, the Board of Directors of Family Benefit, including Defendant Nimmo, omitted to inform Trinity Life that Family Benefit allegedly made promises and representations during the sale of the Decreasing Term Policies, set forth in paragraph 34 above, which were contrary to the plain and unambiguous terms of the Decreasing Term Policy.

57. As alleged in the Petition filed in the Lawsuit, Defendant Nimmo, as a purchaser of two Decreasing Term Policies and as an agent who sold 9 Decreasing Term Policies, allegedly knew of such promises and representations made by Family Benefit but failed to inform Trinity Life of this fact.

58. Trinity Life relied on the representations of the Board of Directors of Family Benefit concerning the policies sold by Family Benefit, including the Decreasing Term Policies, and the book value of the Family Benefit stock.

59. If the allegations in the Lawsuit are found to be true, during the negotiation and communication between the Board of Directors of Family Benefit and Trinity Life concerning Trinity Life's tender offer, statements made concerning potential liabilities of the Family Benefit, the book value of the stock in Family Benefit, and the Decreasing Term Policies were untrue.

12

50085022.2

Case 3:15-cv-05042-MDH   Document 1   Filed 04/29/15   Page 12 of 16

60. If the allegations contained in the Lawsuit are found to be true, Defendant Nimmo understood that the Board of Directors of Family Benefit's omissions and untrue statements were material and would have materially impacted and reduced the price Trinity Life paid for the stock of Family Benefit, including the shares that were owned by Defendant Nimmo and his wife.

61. If the allegations in the Lawsuit are found to be true, Defendant Nimmo benefited from his omission because the sale price of the Family Benefit stock owned by Defendant Nimmo and his wife was inflated.

62. If the allegations in the Lawsuit are found to be true, Defendant Nimmo, as a member of the Board of Directors of Family Benefit, knew, or should have known, that Family Benefit was having financial difficulties and was a troubled insurance company.

63. Defendant Nimmo had a duty to disclose information to Trinity Life concerning the liabilities of Family Benefit, the insurance policies of Family Benefit, including aspects relating to the sale of the Decreasing Term Policies, such as his belief that Family Benefit made representations and promises which were contrary and in conflict with the express terms of the Decreasing Term Policies. This duty arises because:

   a. Defendant Nimmo was a member of the Board of Directors of Family Benefit and had information concerning the book value and of the stock in Family Benefit and the potential liabilities of the company;

   b. Defendant Nimmo, as a purchaser and seller of the Decreasing Term Policies, knew of the alleged oral promises and misrepresentations made during his sales and purchases of the Decreasing Term Policies and Trinity Life did not know this

information and could not reasonably have located information concerning alleged oral promises and misrepresentations; and

   c. Defendant Nimmo knew and understood, or should have known, that Trinity Life was relying on the information provided by Family Benefit during Trinity Life's due diligence investigation of Trinity Life.

64. Defendant Nimmo, in his role as a member of the Board of Directors of Family Benefit and as an individual selling his shares of Family Benefit stock, in connection with the sale of Family Benefit stock to Trinity Life, by the use and the means and instrumentalities of interstate commerce or of the mails, directly or indirectly, (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstance under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon Trinity Life in violation of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. §240.10b-5].

65. If the allegations contained in the Lawsuit filed by Defendant Nimmo are found to be true, Trinity Life suffered damages as a result of Defendant Nimmo's violations of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. §240.10b-5].

WHEREFORE on Count III of its Complaint, Plaintiff Trinity Life Insurance Company, asks that the Court enter judgment in its favor and against Defendant Doyle Nimmo finding that Defendant Doyle Nimmo violated Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. §240.10b-5], awarding Plaintiff Trinity Life Insurance Company damages in an amount that is fair and reasonable, awarding Plaintiff Trinity Life

Insurance Company its attorneys' fees incurred in this action, and for such other and further relief as the Court deems just and proper.

## COUNT IV

### Violation of Section 409.5-509 RSMo. Against Defendant Nimmo

66. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 65 as though set forth herein.

67. Defendant Nimmo, in his role as a member of the Board of Directors of Family Benefit and as an individual selling his shares of Family Benefit stock, in connection with the sale stock in Family Benefit to Trinity Life, made untrue statements of a material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstance under which he made them, not misleading.

68. Such actions by Defendant Nimmo violated Section 409.5-509 RSMo.

69. If the allegations contained in the Lawsuit filed by Defendant Nimmo are found to be true, Trinity Life suffered damages as a result of Defendant Nimmo's violations of Section 409.5-509 RSMO.

WHEREFORE on Count IV of its Complaint, Plaintiff Trinity Life Insurance Company, asks that the Court enter judgment in its favor and against Defendant Doyle Nimmo finding that Defendant Doyle Nimmo violated Section 409.5-509 RSMo., awarding Plaintiff Trinity Life Insurance Company damages in an amount that is fair and reasonable, awarding Plaintiff Trinity Life Insurance Company its attorneys' fees incurred in this action, and for such other and further relief as the Court deems just and proper.

Respectfully Submitted,

**POLSINELLI PC**

By: */s/ John M. Tyner*
**Russell S. Jones Jr.**                MO #30814
**John M. Tyner**                       KS #000583
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000
(816) 753-1536 (fax)

*Attorneys for Plaintiff*

## DEMAND FOR A JURY TRIAL

Plaintiff Trinity Life Insurance Company, in accordance with Federal Rule of Civil Procedure 38 and Local Rule 38.1, hereby demands a jury trial in this matter.

Respectfully Submitted,

**POLSINELLI PC**

By: */s/ John M. Tyner*
**Russell S. Jones Jr.**                MO #30814
**John M. Tyner**                       KS #000583
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000
(816) 753-1536 (fax)

*Attorneys for Plaintiff*